UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Eastern District of Kentucky
FILED
MAR 14 2019
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

| | | |
|---|---|---|
| TOMMY T. SUMSER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 18-4-HRW |
| | ) | |
| V. | ) | |
| | ) | |
| JAILER JEFF LYKINS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Tommy T. Sumser is an inmate confined at the Hart County Jail located in Munfordville, Kentucky. Proceeding without an attorney, Sumser filed a civil rights action against Defendants, Lewis County Jailer Jeff Lykins and Mark Riley, pursuant to 42 U.S.C. § 1983. [D.E. No. 1]

Defendants, through counsel, have each filed motions to dismiss [D.E. No. 25, 34] to which Sumser has filed responses. [D.E. No. 37, 39][1] Lykins and Riley have also filed replies in further support of their motions. [D.E. No. 36, 42] However, Sumser, Lykins, and Riley all attached exhibits extrinsic to the pleadings

---

[1] In response to Lykins' motion, Sumser originally filed a motion styled as a "motion to continue case." [D.E. No. 31] However, the Court previously entered an Order construing this motion as Sumser's response to Lykins' motion to dismiss [D.E. No. 35] and, per the Court's instructions, the response was re-docketed accordingly. [D.E. No. 37]

1

to their motions and responses and relied upon these exhibits in support of their arguments made therein. [D.E. No. 25-1, 34-1, 36-(1-3), 39-(1-3)] Thus, on February 22, 2019, the Court entered an Order [D.E. No. 53] notifying the parties that, pursuant to Federal Rule of Civil Procedure 12(d), the motions to dismiss the complaint would be treated as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). The Court further provided the parties with an additional 10 days within which to submit to the Court any additional responses and/or evidence relevant to the issues raised by the motions to dismiss. *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009).[2] Both parties have now submitted responses to this order. [D.E. No. 56, 59] Thus, this matter has been fully briefed and is ripe for review.

## I.

Sumser's complaint arises from three separate incidents that he alleges occurred while he was housed in the Lewis County Detention Center ("LCDC") in Lewis County, Kentucky. According to Sumser, on January 7, 2017, he was being strip searched by deputy Jailer Mark Riley when, during the course of the search, Riley touched Sumser's buttocks and said that he "had a nice butt." Sumser further

---

[2] After Sumser filed a notice of change of address during this 10-day period [D.E. No. 54], the Court provided an additional 10 days within which to submit responses to the Court's prior Order. [D.E. No. 55]

2

alleges that a similar incident occurred on January 15, 2017. He states that he reported both incidents to Jailer Jeff Lykins and that, although Lykins said he would take care of it, he never did. [D.E. No. 1 at p. 4][3]

Sumser further alleges that, on January 21, 2017, he was raped by Riley while he was handcuffed in the back seat of a jail car returning from the Meadowview Regional Center in Maysville, Kentucky. [*Id.* at p. 4-5] According to Sumser, Riley threatened to hurt Sumser and his family if he reported the rape. [*Id.* at p. 5] Sumser states that he reported the rape to Lykins on January 25, 2017, and that Lykins said that he would "take care of it," but that Lykins did not do anything about it. [*Id.* at p. 5] However, Sumser states that the LCDC does not have a way to report a "PREA" (referring to a violation of the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.*).

Sumser states that he was in fear of Riley until Sumser was transferred to the Harlan County Detention Center in August 2017. He states that he reported the rape to Michelle Floyd at the Kentucky Department of Corrections on October 27, 2017 and Floyd, in turn, contacted the Kentucky State Police. According to documents submitted by Sumser, the Kentucky State Police presented the case to the Lewis

---

[3] In his complaint, Sumser alleges that he reported the January 7, 2017 incident to Lykins on January 9, 2018 and the January 15, 2017 incident on January 17, 2017. [D.E. No. 1 at p. 4]

3

County Grand Jury, which issued a No True Bill, meaning that they did not find enough evidence to pursue charges against Riley. [D.E. No. 39-1, 39-2]

Sumser also alleges that, on January 25, 2017, he asked Jailer Lykins to take Sumser to the hospital or doctor for medical treatment and counseling in light of the rape. [D.E. No. 1 at p. 5] According to Sumser, although Lykins said that he would, Lykins never arranged for medical care for Sumser, despite being asked again several times. [*Id.* at p. 5]

Based on these allegations, Sumser originally brought claims against Deputy Riley and Jailer Lykins in their official capacities for multiple violations of Sumser's "right to be free of a sexual crime (PREA)" and his right to appropriate medical care. [*Id.* at p. 5] Notably, Sumser's complaint makes clear that he is suing the Defendants in their official capacities only. [D.E. No. 1 at p. 2] Thus, he does not allege claims against either Defendant in his individual capacity. As relief, Sumser seeks injunctive relief in the form of an Order requiring that Jailer Lykins and Deputy Riley be fired, as well as the posting of PREA posters all over the jail. Sumser also seeks $350,000.00 in punitive damages. [*Id.* at p. 6]

After screening the complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, the Court dismissed Sumser's PREA claim, as "the PREA does not create a private cause of action which can be brought by an individual plaintiff." [D.E. No. 18, quoting *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *2 (W.D.

4

Ky. Aug. 19, 2014)(collecting cases)] However, the Court found that a response was required with respect to Sumser's complaint to the extent that it alleges claims under the Eighth Amendment of the United States Constitution based on his allegations of deliberate indifference to his serious medical needs, as well as his allegation that the Lewis County Detention Center does not have any way to report "a PREA" (presumably meaning a rape), suggesting an intent to pursue an Eighth Amendment "failure to train" deliberate indifference claim. [*Id.*]

In their motions, Defendants argue that Sumser's complaint must be dismissed because: (1) Sumser failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e; and (2) any claim that Sumser has arising from the January 7, 2017 incident is barred by the applicable statute of limitations. [D.E. No. 25, 34] Lykins also argues that Sumser fails to state a claim for which relief may be granted against him both because Sumser fails to allege any acts or omissions by Lykins sufficient to state a claim for relief and because Sumser fails to make any allegations that the incidents described in his complaint are the product of any policy, custom, or practice of the LCDC, which is required to impose liability on Lykins in his official capacity. [D.E. No. 25]

## II.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364

(6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Sumser is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Here, although Defendants' motions are styled as motions to dismiss, Defendants and Sumser attach and rely upon exhibits extrinsic to the pleadings in support of their respective motions and responses. [D.E. No. 25-1, 34-1, 36-(1-3), 39-(1-3)] Thus, as the Court previously notified the parties [D.E. No. 53], the Court will treat Defendants' motions to dismiss the complaint as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). *See also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-

6

sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## A.

As noted above, construed broadly, Sumser's complaint suggests claims for violations of the Eighth Amendment of the United States Constitution based on his allegations of deliberate indifference to his serious medical needs, as well as his claim that the LCDC did not have a system in place for him to report a rape. However, Sumser did not properly and timely exhaust his administrative remedies

with respect to these claims as required by federal law. Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner wishing to challenge the circumstances or conditions of his confinement must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006); *Campbell v. Barron*, 87 F. App'x 577, 577 (6th Cir. 2004). Administrative remedies must be exhausted prior to filing suit and in full conformity with the agency's claims processing rules. *Woodford v. Ngo*, 548 U.S. 81, 92-94 (2006).

Contrary to Sumser's allegation in his complaint that the LCDC has no grievance procedures in place to report sexual assault and/or abuse, Defendants have submitted a document signed by Sumser upon being booked into the LCDC acknowledging that the LCDC maintains a grievance policy. [D.E. No. 36-1] Defendants have further attached a copy of the LCDC inmate grievance procedure, which follows that provided by 501 KAR 3:140. [D.E. No. 25-1] This procedure provides, in part, that "[a]ny inmate shall be allowed to file a grievance at such time as the inmate believes he or she has been subject to abuse, harassment, abridgment of civil rights or denied privileges specified in the posted rules." [D.E. No. 25-1] The procedure requires that an inmate file a grievance within five days from the date

8

of the event that is the subject of their grievance. [*Id.*] The procedures further provide that "grievances shall be responded to in a responsive a prompt manner," but "[i]n no case shall a response be delayed beyond ten (10) days unless the inmate has been notified in writing, and has waived in writing, their right to a timely response." [*Id.*] If the inmate is not satisfied with the response, the inmate has five days from the date of the first response to his or her grievance to appeal the response to the Jailer's designated grievance officer. [*Id.*] The Jailer's designated grievance officer then has five days from the date of the appeal to issue a second response to the grievance. [*Id.*] If the inmate is dissatisfied with the second response, the inmate has two days to appeal to the jailer, who has final authority over the appeal. [*Id.*] Because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules...," *Woodford*, 548 U.S. at 90, the prisoner must file the initial grievance and any appeals within these time frames.

Sumser claims to have reported the January 7, 2017 incident to Lykins on January 9, 2017, the January 15, 2017 incident to Lykins on January 17, 2017, and the alleged rape on January 21, 2017 to Lykins on January 25, 2017. [D.E. No. 1 at p. 4-5] Moreover, with respect to his denial of medical care claim, he alleges that he requested medical care on January 25, 2017 and that, although Lykins said that he would arrange for it, Lykins never did, despite being asked again several times. [D.E. No. 1 at p. 5] However, Defendants have produced a copy of Sumser's entire

9

inmate file from his incarceration at the LCDC and there are no grievances with respect to any of these incidents in the file. [R. 36-2, Inmate File]

In response, Sumser offers his own unsupported, self-serving statements in his pleadings that he did file several grievances about the incidents alleged in his complaint and personally gave them to Lykins and that he further personally told Lykins about the incidents. [D.E. No. 37 at p. 1] However, in order to defeat a properly supported motion for summary judgment, the party opposing the motion may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims. *See Anderson*, 477 U.S. at 256-57. "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). *See also Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 325 n. 1 (6th Cir. 1988) ("[A] motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues."); *Perry v. Agric. Dep't*, No. 6: 14-168-DCR, 2016 WL 817127, at *10 (E.D. Ky. Feb. 29, 2016) ("[C]onclusory allegations are not evidence and are not adequate to oppose a motion for summary judgment.").

In response to the evidence submitted by Defendants that Sumser did not submit any grievances, Sumser submits a blank LCDC Grievance Sheet form [D.E. 44-1] and what he claims are his own handwritten copies of his grievances that he filed [D.E. No. 45-2] and the first appeals of the denials of each grievance. [D.E. No. 45-1] According to Sumser, he made these handwritten copies after Lykins told him that he would make him copies of the grievances and the appeals of his grievances, but then Lykins never did. [D.E. No. 45]

However, these handwritten copies are neither authenticated as required by Federal Rule of Evidence 901, nor are they accompanied by any sort of verification that they are accurate copies of the grievances and initial appeals allegedly submitted by Sumser, that anyone at the LCDC actually received these grievances, or that they were actually created on the dates indicated. While "[e]videntiary submissions by a party opposing a motion for summary judgment do not necessarily need to be in a form that is admissible at trial," that party must "set forth enough evidence that will be admissible at trial to demonstrate that a genuine dispute of material fact exists, and that a trial is necessary to resolve the dispute." *See Hurick v. McKee*, No. 17-1396, 2018 WL 4908138, at *3 (6th Cir. Apr. 30, 2018), *reh'g denied* (Aug. 8, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)). Such evidence can take the form of "depositions, documents, electronically stored information, affidavits or declarations, stipulations

11

...admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). However, the United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that "unauthenticated documents do not meet the requirements of Rule 56(e)." *Alexander*, 576 F.3d at 558. "And even though pro se litigants are not held to the same standard as attorneys..., a pro se litigant may not disregard the rules of the court." *Hurick*, 2018 WL 4908138 at *2 (citations omitted).

In *Hurick*, the court was faced with a similar situation as in this case. In response to a motion for summary judgment, Hurick, a pro se prisoner plaintiff, submitted copies of letters that he claimed to have written prison officials informing them that he had received death threats and requesting protective custody. *Id.* at *2-*3. On appeal from the district court's grant of summary judgment in the defendants' favor on Hurick's Eighth Amendment failure to protect claims, the Sixth Circuit made it clear that "[s]uch unauthenticated and unverified documents do not create any genuine issue of material fact." *Id.* at *3.

Similarly, in this case, the Court finds that Sumser's submissions of what he claims to be handwritten copies of what he claims he submitted as his grievances and initial appeals of the denials of those grievances are insufficient to create a genuine issue of material fact regarding his failure to exhaust his administrative

12

remedies with respect to the claims he is pursuing in this case. For this reason alone, the Defendants' motions to dismiss must be granted.

However, even if the Court accepted Sumser's handwritten copies as evidence of the grievances he filed, this "evidence" establishes only that he filed initial grievances with respect to each incident and then filed one appeal after he did not get a response on each grievance. [D.E. No. 45-1, 45-2] However, the LCDC's grievance procedures require that an inmate unsatisfied with the response to his first appeal file a second appeal within two days of the denial of his or her first appeal [D.E. No. 25-1, Grievance Procedure at (D)(e)], which Sumser does not allege that he pursued. Thus, even if the Court accepted the evidence submitted by Sumser in support of his claim that he pursued his administrative remedies, because Sumser failed to fully exhaust his administrative remedies with respect to his claims, he did not satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a) prior to filing his complaint, thus his complaint must be dismissed. *See Napier v. Laurel County*, 636 F.3d 218, 222 (6th Cir. 2011) (the exhaustion requirement is a strong one, and where the plaintiff has not complied with it, a district court may properly dismiss the complaint without prejudice to afford the plaintiff the opportunity to properly invoke and follow the jail's grievance procedures with respect to his concerns); *Liggett v. Mansfield*, 2009 WL 1392604, at *2-3 (E.D. Tenn. May 15, 2009) ("A prisoner who files a grievance but does not appeal to the highest possible administrative level,

does not exhaust available administrative remedies.") (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)).

Sumser also suggests that his failure to exhaust his administrative remedies should be excused because officials at the LCDC do not follow the grievance policy. However, he offers no proof of this, other than his own, unsupported statements, which are insufficient to overcome a motion for summary judgment. Sumser also continues to argue that liability should be imposed upon Lykins because he "broke the federal law by not reporting me…being raped under the federal PREA law," as well as his failure to respond to the grievances that Sumser claims to have filed. [D.E. 31 at p. 3] However, as the Court previously indicated, the PREA "does not create a private cause of action which can be brought by an individual plaintiff." *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014)(collecting cases). *See also Hodge v. Burkhart*, No. 15-CV-105-GFVT, 2016 WL 2986262, at *5 (E.D. Ky. May 20, 2016); *Duncan v. Grief*, No. 5:17-CV-P42-GNS, 2017 WL 3014827, at *4 (W.D. Ky. July 14, 2017). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. 42 U.S.C. § 15601 *et seq*. The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07-CV-229, 2008 WL 3851294, at *3 (D. Vt. Aug.12, 2008) (quoting *Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002)).

Because the Court finds that Sumser failed to exhaust his administrative remedies with respect to his claims, it need not address the Defendants' argument that his claims based on events occurring on January 7, 2017 are barred by the applicable statute of limitations.

**B.**

Moreover, although the Court previously indicated that Sumser's allegation that the LCDC did not have procedures in place through which he could report a rape suggested Sumser's intent to pursue an Eighth Amendment "failure to train" claim of deliberate indifference, it is now clear that Sumser has failed to state a claim alleging a violation of the Eighth Amendment for which relief may be granted.

First, Sumser's complaint makes clear that his claims are against Lykins and Riley in their official capacities only. [D.E. No. 1 at p. 2] However, a suit against a government employee in his or her "official capacity" is not a suit against the employee for his or her conduct while performing job duties for the government. Rather, it is a suit against the government agency that employs the individual. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008). Thus, Sumser's "official capacity" claims against Lykins and Riley are, in actuality, claims against Lewis County. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint.").

15

However, Sumser does not assert that the actions of either Lykins or Riley were taken pursuant to an established policy of Lewis County. Because a county government is only liable under § 1983 when its employees cause injury by carrying out the county's formal policies or practices, *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978), a plaintiff must specify the county policy or custom which he alleges caused his injury. *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010). Sumser points to no such policy in his complaint, warranting dismissal of the complaint for failure to state a claim. *Bright v. Gallia County, Ohio*, 753 F. 3d 639, 660 (6th Cir. 2014); *Brown v. Cuyahoga County, Ohio*, 517 F. App'x 431, 436 (6th Cir. 2013).

To the extent that Sumser suggests that Lewis County's lack of a policy by which he could report a violation of the PREA caused his injuries, to establish a claim that a defendant acted with deliberate indifference by failing to properly hire, train, or supervise its employees, "[a] showing of simple or even heightened negligence will not suffice." *Doe v. Patton*, 381 F. Supp. 2d 595, 601 (E.D. Ky. 2005) (internal quotation marks and citation omitted), *aff'd sub nom. Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962 (6th Cir. 2006). Instead, "[a] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of*

16

*Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). Where a complaint "is devoid of any allegations identifying the allegedly deficient policy, how existing policies and procedures are inadequate or otherwise place inmates' serious medical needs at risk, or [defendant's] awareness of the deficiency in existing policy and the risk it posed[,]" the complaint fails to state a viable claim for failure to train or supervise. *Dishman v. Correct Care Solutions, LLC*, No. 17-CV-98-HRW, 2018 WL 3097319, at *5 (E.D. Ky. June 22, 2018) (citing *Twombly*, 550 U.S. at 555).

Sumser certainly does not suggest that Lykins encouraged or directly participated in any of the misconduct by Riley alleged here. Moreover, in light of the evidence submitted by Defendants showing that policies were, in fact, in place pursuant to which Sumser could report the alleged violations of his civil rights, including his allegations of rape [D.E. No. 25-1, 36-1], Sumser clarified that his claim is based on allegations that these procedures were not followed. However, he offers no evidence in support of his claim other than his own allegations made in his responsive pleadings. [D.E. No. 37, 39, 45, 59] A "failure to train" claim cannot be used as a way of circumventing the rule that supervising officers are not liable for the actions of their subordinates under the doctrine of *respondeat superior*. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) ("To prevent municipal liability for a hiring decision from collapsing into *respondeat superior*

17

liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.").

To the extent that Sumser's claims are based on Lykins' alleged failure to respond to Sumser's grievances complaining about the alleged sexual harassment and rape by Riley and Sumser's lack of adequate medical care, prison officials are not liable under § 1983 for denying or failing to act on grievances. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). And to the extent that Sumser suggests that Lykins should be held responsible in light of his status as the jailer, the mere fact of supervisory capacity is not enough: respondeat superior is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). Indeed, "[i]n a § 1983 suit or a Bivens action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Thus, Sumser has failed to state a claim against that Lewis County officials acted with deliberate indifference in violation of the Eight Amendment, either by failing to train its employees in how to process grievances alleging civil rights violations or by acting with deliberate indifference to Sumser's serious medical needs.

To be clear, the rape allegation made by Sumser is quite serious. However, although the Court has an obligation to liberally construe a complaint filed by a person proceeding without counsel, it has no authority to create arguments or claims

that the plaintiff has not made. *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003). Sumser clearly indicates his intention to pursue his claims against Defendants in their official, as opposed to individual, capacities. [D.E. No. 1] However, his complaint fails to state a claim against Defendants in their official capacities, warranting dismissal of his complaint.

For all of these reasons, the Defendant's motions to dismiss, construed as motions for summary judgment, will be granted and Sumser' complaint will be dismissed. Because this action is dismissed, Sumser's pending motions (a "motion for order to change amount plaintiff is seeking in punitive damages" [D.E. No. 40]; a "motion for mediation hearing" [D.E. No. 47]; a "motion for bench trial" [D.E. No. 49]; and a "motion for fast and speedy trial" [D.E. No. 51]) will be denied as moot.

Accordingly, **IT IS ORDERED** that:

1. Defendants' motions to dismiss [D.E. No. 25, 34], construed as motions for summary judgment, are **GRANTED**.

2. Sumser's complaint [R. 1] is **DISMISSED**.

3. All pending motions or requests for relief in this case, including Sumser's "motion for order to change amount plaintiff is seeking in punitive damages" [D.E. No. 40], Sumser's "motion for mediation hearing" [D.E. No. 47], Sumser's "motion for bench trial" [D.E. No.

49], and Sumser's "motion for fast and speedy trial" [D.E. No. 51], are **DENIED AS MOOT**.

4. This action is **STRICKEN** from the Court's active docket.

5. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

This __14th__ day of March, 2019.



Signed By:
_Henry R. Wilhoit, Jr._
United States District Judge